ROBERTSON, Justice:
John N. Kreutz was indicted, tried and convicted in the Circuit Court of Lauder-dale County for the crime of rape. He was sentenced to life imprisonment in the Mississippi State Penitentiary. He appeals.
Appellant contends that:
1. The lower court erred in not sustaining the timely motion of defense counsel for a mistrial.
2. The lower court erred in overruling appellant’s motion for a directed verdict.
3. The verdict of the ■ jury was against the overwhelming weight of the evidence.
On Sunday afternoon, December 3, 1972, Mrs. Margaret Bates, a 64-year-old widow, was returning from the Meridian Naval Air Station where she had been interviewed for a baby-sitting job. She had recently moved to Toomsuba, and in trying to find a shorter route to her home, she drove down an asphalt road to where it ended in a “T” with one road to the left and one to the right. She stopped and was trying to decide which branch to take, when Kreutz passed in his truck and stopped.
She asked him which road to take to Highway 45, and he told her to follow him, that he was going that way. She followed him until he led her into a deadend road, whereupon she quickly turned her car around and traveled in the opposite direction until she came to a tavern, where she stopped and asked directions to Highway 45.
She returned to her car and continued to drive down the asphalt road toward Highway 45, until she came upon Kreutz’s truck *452 stopped in her lane of traffic, opposite a mud hole in the left lane. Rather than go through the mud hole, she stopped her car but left the engine running. Kreutz came back to her car, opened the door, turned the engine off, gave her the keys, then attempted to pull her out of the car. She resisted and fought with him and in the course of being pulled out of the car and scrambling to get back in her car again, she sustained numerous scratches and bruises and wrenched and injured her left knee.
Kreutz finally succeeded in throwing her into the back of his truck, whereupon he jumped into the cab and drove off. Unnoticed by him, she rolled out of the back of the truck and returned to her car, but couldn’t get it started.
As she walked down the road to get help, Kreutz returned, grabbed her and pushed her into the passenger side of the truck. He then drove to a garbage dump, pulled her from the passenger side, pushed her under the steering wheel on the driver’s side, and proceeded to have sexual relations with her. Kreutz afterwards pushed her over to the passenger side, drove back to her car, pushed her out and quickly drove away.
She flagged down an approaching car and the two men in this car got her car started and she was able to drive to a restaurant where she called for help. Two men came out and assisted her in getting into the restaurant where she reported that she had been attacked and raped by Kreutz.
Kreutz’s main contention is that she consented. Mrs. Bates admitted that when the final act took place that she, as a 64-year-old woman, was so exhausted from her initial encounter with Kreutz, that her left leg was paining her so, and that she was in such a cramped position under the steering wheel that she could not effectively resist Kreutz’s determined advances.
Doctor Santiago testified that when he examined her shortly after the incident she had a bruise on the left side of her forehead, both arms were scratched and bruised, both legs were scratched and bruised, she had a bruise on her right hip and an abrasion and bruise between the urethra and vagina.
Dr. Walter Holladay testified that when he examined Mrs. Bates several days later in the hospital she had a number of bruises and abrasions and a fracture of the left leg between the knee and ankle. A plaster tube cast was applied from the ankle to the groin and this cast remained on for about 25 days.
Constable Parker Gray, as well as other witnesses at Wedgeworth’s Restaurant when Mrs. Bates arrived there after the incident, testified that her blouse and bra were torn and that she was shaking and crying and “pretty much shocked.”
Kreutz testified that she practically invited sexual relations and submitted willingly.
This presented a question for the jury to decide and there was ample testimony to support the jury’s verdict of guilty.
The only other contention of the appellant is that because of certain remarks made by Mrs. Bates’ older brother while a spectator in the courtroom that appellant’s motion for a mistrial should have been sustained. The scant testimony on this contention was that at some time during the long trial Charles Rowe, while defense counsel Self was cross-examining a witness, said: “Sit down”. Mr. Self did not hear this remark. Neither did the trial judge. At another time, Robert Bailey, one of defense counsel, while defendant Kreutz was being questioned, heard Mr. Rowe say “He’s lying”.
Rowe was a spectator only; he took no part in the trial. The trial judge did not hear any of his remarks. Out of the pres *453 ence of the jury, the trial judge made these comments to counsel for the State and the Defense:
“I want to make a couple of other statements for the record, and then I’m going to bring the jury in and I’m going to ask the jury one question as is indicated here in this case should be done.
“First, I have been observing the Courtroom audiences and crowds for something over 20 years. I have not seen nor heard some of the things that other people in this Courtroom have apparently seen and heard. I pass no judgment on what has occurred or what words were uttered, if any, because I simply did not hear them or see them. That is not to say they may not have been uttered or said. I have not in my observation detected a hostile atmosphere or a particular atmosphere of any kind on the part of spectators or audience, except possibly a curious atmosphere with the exception of Mr. Charles Rowe. It is obvious he is the brother of the complaining witness. This has been obvious to me that he has been very interested in this cause. What he has said and what he has done, I cannot pass judgment on him because I simply haven’t seen or heard it with one exception of the time he rose in the Courtroom and asked for permission to speak to the witness, which was denied at that time. Therefore, I do not delve into that any further. As to what others have seen and heard, I do not attempt to comment on, to impeach them, or anything else. All of us see and hear things from a different standpoint. I’m not in the best position in the world, seated at the bench as here I am, to see and hear these things, so I accept what has been said by various witnesses as being a better statement of what was seen and heard closer to them than the Court could attempt to make.
“Mr. Bailiff, bring the jury out please, sir.”
The trial judge then addressed the jury, as follows:
“Ladies and gentlemen, on the first day of this trial as well as other days, you took an oath that you would decide this case solely and alone on the law that came to you from the Court in the form of written instructions and the evidence that you heard from the witness stand. I would like to ask you at this time, during the three days that we have been here, right up to this very moment, has anything happened by way of noise, language, words, atmosphere, or anything of any nature that would prejudice you in any way in the decisions that you will be called on to make by the Court eventually, or that would prevent you or hinder you from making those decisions. If there have been any such things of any nature emanating from the Courtroom in any fashion, that would prejudice you, I would like for you to speak at this point, if you’re still capable of deciding this case solely and alone on the law and the evidence as you originally took an oath to do.”
The trial judge continued:
“Would you raise your hand if you can do that? I would like for the record to show that all 12 of the regular panel of the jury and the two alternate jurors responded affirmatively by raising their hand.”
The motion for mistrial was then overruled. We think that the trial judge was correct in overruling the motion for a mistrial.
The conviction and sentence are, therefore, affirmed.
Affirmed.
RODGERS, P. J., and SMITH, SUGG and BROOM, JJ., concur.